CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

July 21, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
  DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE  DIVISION**

| | | |
|---|---|---|
| **DAVID MUSSELMAN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25CV00431 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **NEW RIVER VALLEY** | ) | JUDGE JAMES P. JONES |
| **REGIONAL JAIL OFFICERS, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

*David Musselman, Pro Se Plaintiff; Julian F. Harf, SPILMAN THOMAS & BATTLE, PLLC, for Defendant, Preston Evick.*

The plaintiff, David Musselman, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that the defendant, Preston Evick, used excessive force against him.  Currently pending are two motions filed by Evick, (1) Defendant's Motion for Judgment on the Pleadings, Dkt. No. 17, and (2) Defendant's Motion for Summary Judgment, Dkt. No. 19.  The matter has been briefed by the parties, and it is ripe for consideration.  Upon review, I conclude that the motions must be granted.

I. BACKGROUND.

Musselman filed his first Complaint on June 30, 2025, in which he described an incident that occurred on April 4, 2025, at New River Valley Regional Jail (NRVRJ).  Musselman's Complaint, naming New River Valley Regional Jail

Officers as the defendant, was handwritten on notebook paper and contained his signature and a notary stamp.  The court directed Musselman to amend his Complaint to correct certain deficiencies, advising that he cannot collectively sue New River Valley Regional Jail Officers under § 1983.[1]  Musselman thereafter filed an Amended Complaint, naming only Evick as the defendant and making substantially similar allegations as those in his first complaint.[2]  The Amended Complaint was filed on a § 1983 complaint form and, although signed and certified under Rule 11, it was not verified.

According to Musselman's operative Amended Complaint, on the date in question, he had a medical issue with his right arm and wrist.  During the evening "pill pass" Musselman was showing his medical issue to a nurse when the defendant, Evick, told him to "lock down."  Am. Compl. 5, Dkt. No. 8.  Musselman said he "would after [he] spoke with the nurse."  *Id.*  Evick then "pushed [him] in [his] cell slammed [him] on the floor . . . hit [him] repeatedly and kneed [him] in [his] back where [he] had recently had major surgery."  *Id.*  Musselman insists that "at no point did [he] resist or fight back because [he] was unconscious and had no function of [his] right arm."  *Id.*  He was handcuffed and "dragged" to booking where Evick hit

---

[1] The court also directed the Clerk to mail Musselman a § 1983 complaint form.

[2] Musselman named "Evica #73" as the defendant in his Amended Complaint. Counsel clarified that Preston Evick is the officer believed to be the intended defendant.

him several more times.  *Id.*  Musselman was later taken to the hospital, where he claims an evaluation revealed that he had a fractured rib bone, bruised ribs, and a full contraction of his right hand.  He states that he has since lost all feeling in and function of his right hand.  As relief, Musselman seeks monetary damages.

The defendant tells a different story.  In his Declaration attached to the Memorandum in Support of Motion for Summary Judgment, Evick states that during a "pill pass" on April 3, 2025, Musselman asked if he could see a nurse about his hand and "[u]pon learning that he would not immediately be seen by the nurses, Musselman became hostile and began to yell and cuss."  Def.'s Mem. Supp. Mot. Summ. J. Evick Decl. 1, Dkt. No. 20-1.  Musselman became increasingly hostile and Evick "instructed Musselman to enter his cell for the safety of the medical technicians."  *Id.* at 2.  Because Musselman refused the order, Evick "placed [his] left hand on Musselman's chest to push him back into his cell."  *Id.*  Musselman attempted to "physically push past [Evick]," and Evick told him to stop.  *Id.*  When Musselman "refused to comply with [Evick's] direct order, he "placed both of [his] arms around [Musselman's] upper body and guided him to the wall."  *Id.*  Musselman continued to resist, and Officer Safewright arrived to assist.  Evick and Safewright "placed Musselman on the ground using the appropriate amount of force to attempt to get him handcuffed."  *Id.*  To avoid restraint, Musselman "placed his arms under his body."  *Id.*  While waiting for additional officers to arrive for support, Evick

"maneuvered [his] legs against the wall to create leverage to allow [him] to get Musselman's hands behind his back." *Id.* at 3. Evick "then used both hands to place Musselman's left arm behind his back" as Safewright placed handcuffs on Musselman. *Id.* By placing "both of [his] arms on Musselman's right arm," the two officers "were able to secure handcuffs on Musselman." *Id.* Evick "then straddled Musselman to prevent him from getting up until more officers arrived to assist." *Id.* Six officers arrived, two of which transported Musselman to booking. According to Evick, "Musselman was seen by medical staff and eventually transported to the hospital by EMS personnel." *Id.* Finally, Evick declared that "[a]ll of the actions [he] took were done in good faith in an attempt to maintain and restore order at the NRVJ and not for the purpose of causing harm to Musselman." *Id.*

An investigation report signed by Safewright on April 4, 2025, is consistent with Evick's recount of events. *See* Def.'s Mem. Supp. Mot. Summ. J. Ex. 2, Dkt. No. 20-2. Evick also stated that "the use of force component of the interaction was not captured on camera." Def.'s Mem. Supp. Mot. Summ. J. at 1 n.2, Dkt. No. 20. But to contradict Musselman's version of events, Evick stated that there is video evidence of Musselman being transported to booking, and included still photos of the video evidence, which do not show Evick's involvement in Musselman's transport to booking.

Evick filed a Motion for Judgment on the Pleadings and a Motion for Summary Judgment. Musselman has not filed a response to the Motion for Judgment on the Pleadings. In any event, he has filed a response to the Motion for Summary Judgment. Importantly, Musselman's Response is not verified.

In response to the Motion for Summary Judgment, Musselman denies any hostility, trying to "push past" Evick, or otherwise resisting in any manner. Pl.'s Resp. 1, Dkt. No. 24. Musselman insists that Evick acted "with purposeful intent to harm [him]." *Id.* at 1–2. Attached to Musselman's Response are medical bills from Carilion Clinic. The medical bills show that Musselman was evaluated by physicians on April 3, 2025, to April 4, 2025, and is responsible for paying for "IV Therapy," "CT Scan," "Emergency Room," and "Pharmacy – Single Source Drug." *Id.* Attach. 1, Dkt. No. 24-1. There is no description of the evaluation, physician note, or other information regarding Musselman's injuries included in these documents. Evick submitted a reply brief, arguing that Musselman has offered no evidence to support his claims and requesting that the court grant judgment in Evick's favor.

## II. DISCUSSION.

### A. Defendant's Motion for Judgment on the Pleadings.

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for

judgment on the pleadings." Fed. R. Civ. P. 12(c). According to the Fourth Circuit, "[a] Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (quoting *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014)). Thus, in analyzing such a motion, the standard under Rule 12(b)(6) applies and "the complaint will survive only if it 'states a plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2000)).

Musselman has presented his claims under § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). In his Amended Complaint, he explains that he is suing Evick in both his individual and official capacities. Am. Compl. 3, Dkt. No. 8. Evick argues, however, that Musselman has failed to state a claim against him in his official capacity. Indeed, neither the state nor state officials acting in their official capacities are "persons" within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, I agree that Musselman has failed to state a claim for relief against Evick in his official capacity, and will grant Evick's Motion for Judgement on the Pleadings in this regard.

B.  Defendant's Motion for Summary Judgment.

1.  Standard of Review.

Rule 56 of the Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* In considering a motion for summary judgment, the court must view the facts and justifiable inferences in the light most favorable to the nonmoving party. *Id.* at 312-13. To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

2.  Eighth Amendment Excessive Force Claim.

Musselman has alleged that Evick violated his constitutional rights by using excessive force against him, a claim that falls within the Constitution's Eighth Amendment prohibition of the infliction of cruel and unusual punishments.[3] Under

---

[3] It is unclear from Musselman's pleadings whether he was a pretrial detainee or a convicted and sentenced prisoner at the time that he filed his first Complaint. Musselman claims that his Eighth Amendment rights were violated. Am. Compl. 5, Dkt. No. 8. And Evick couches his summary judgment argument in the Eighth Amendment. Def.'s Mem. Supp. Mot. Summ. J. 5, Dkt. No. 20. Even so, "[e]xcessive force allegations are subject to

the Eighth Amendment, prisoners have a right to be free from the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 320 (1986) (quoting *Ingram v. Wright*, 430 U.S. 651, 670 (1977)).  To establish a violation of this right in order to maintain a claim that excessive force was used by a prison official, an inmate must satisfy both an objective and subjective component.  *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

Under the objective component, it must be shown that the harm inflicted was sufficiently serious.  *See Williams*, 77 F.3d at 761.  Yet the extent of the injury is only one factor to consider because even "de minimus injury, if the product of malicious and sadistic use of force, can sustain the claim." *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (citing *Wilkins v. Gaddy*, 599 U.S. 34, 37–38 (2010)).  Rather, "the nature of the force," is the relevant inquiry.  *Parker*, 625 F. App'x at 199 (quoting *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir, 2013)).

Evick does not dispute whether Musselman has met the objective component. Thus, this excessive force analysis rests in the subjective component, which requires

different reviewing standards based on the status of the plaintiff." *Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024).  "For a pre-trial detainee, the proper standard comes from the Fourteenth Amendment" and "requires a showing that 'the force purposefully or knowingly used against him was objectively unreasonable.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)).  In the event that Musselman was a pretrial detainee at the time, the analysis here does not change because Musselman has not produced any evidentiary support for his allegations to satisfy the requisite showing under the Fourteenth Amendment.

asking whether the prison official acted with a sufficiently culpable state of mind. *See Williams*, 77 F.3d at 761. "[T]he 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Here, Evick has provided evidence that demonstrates that he was not acting maliciously or sadistically to cause harm. Instead, his Declaration and the Investigation Report of Officer Safewright demonstrate that Evick applied force in a good-faith effort to restore discipline after Musselman became combative.

While Musselman disputes Evick's version of events, he has submitted no evidence to support his contentions and has failed to verify any of his statements so that they may be considered by the court in an evidentiary manner to survive summary judgment. Generally, "'when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion.'" *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)). However, if a pleading is "verified," it "is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained

therein are based on personal knowledge." *Id.*  A complaint is verified if it is "signed,

sworn, and submitted under penalty of perjury." *Id.* at 495 n.2.

Musselman's Response to Evick's Motion for Summary Judgment does not

contain a factual affidavit and is not otherwise verified in order to serve as one.  It

does not include Musselman's signature, is not sworn, and does not contain a

statement that it was submitted under penalty of perjury.  Although Musselman's

operative Amended Complaint is signed, it is likewise not verified.  While an

amended complaint "supersedes those that came before it," an amended complaint

"does not divest an earlier verified complaint of its evidentiary value as an affidavit

at the summary judgment stage." *Id.* at 499.  Therefore, if Musselman's original

complaint was verified it could serve as a factual affidavit in support of his current

allegations.  Musselman's original complaint was signed, dated, and stamped by a

notary.  Even so, it bears no indication that it was sworn or otherwise made under

penalty of perjury.[4]  Therefore, I will not consider the original complaint as an

affidavit for purposes of the summary judgment analysis.  *See*, *e.g.*, *Lambert v.*

*Thomas*, No. 7:20CV00002, 2021 WL 1156857, at *4 (W.D. Va. Mar. 26, 2021)

---

[4] In Virginia, a notarized document is sworn only if the oath taker affirms that the statement is made with "a vow of truthfulness or fidelity on penalty of perjury." *Goodman*, 986 F.3d at 495 n.2 (citing Off. of the Sec'y of the Commonwealth, *A Handbook for Virginia Notaries Public* 13, 18 (Dec. 15, 2017), https://www.commonwealth.virginia.gov/media/governorvirginiagov/secretary-of-the-commonwealth/pdf/2017-December-15-revised-Handbook-.pdf).

(determining that a notarized response to a motion for summary judgment was not verified where it did not otherwise indicate that it was sworn or made under penalty of perjury in order to be considered as an affidavit for purposes of summary judgment).

The only evidentiary materials that Musselman has provided are his medical bills from Carilion Clinic. That said, Musselman has not explained how these documents support his claims. Consequently, because "mere allegations in an unverified complaint do not constitute evidence for summary judgment," Musselman's factual allegations cannot create a genuine dispute of material fact in order to survive summary judgment. *Turner v. Wal-Mart Assocs., Inc.*, No. 23-2094, 2025 WL 2049054, at *3 (4th Cir. July 22, 2025) (unpublished). Therefore, where Evick has set forth evidence in support of his Motion for Summary Judgment by describing an incident in which reasonable force was used against Musselman, and Musselman has offered no evidence to the contrary in order to establish a genuine dispute of material fact, Evick is entitled to judgment as a matter of law.[5]

---

[5] I recognize the leniency that must be provided to a pro se litigant in cases such as these. *Nichols v. Bumgarner*, 173 F.4th 511, 519 (4th Cir. 2026). And, while the spirit of the law is that "decisions on the merits [should not] be avoided on the basis of . . . mere technicalities," I do not consider Musselman's lack of verified pleading to be a mere technicality. *See Parish v. United States*, 605 U.S. 376, 388 (2025). Indeed, the Fourth Circuit has acknowledged the ubiquitous and voluminous nature of pro se prison litigation. *See Jackson v. Dameron*, 171 F.4th 641, 648 (4th Cir. 2026). Thus, verified pleadings are essential to the court's consideration in order to identify cognizable claims and get to the truth of these matters.

III. Conclusion.

For the reasons stated, Evick's Motion for Judgment on the Pleadings and Motion for Summary Judgment will be granted. A separate Judgment will be entered.

ENTER: July 21, 2026

/s/ James P. Jones
Senior United States District Judge